IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEL BRIDGEFORTH,

    Petitioner,

No. CIV S-01-0679 RRB JFM P

vs.

A. C. NEWLAND, et al.,

    Respondents.

FINDINGS AND RECOMMENDATIONS

/

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on multiple state law criminal counts and the sentence of twelve years and eight months in prison imposed thereon.

BACKGROUND[1]

> In case No. 96F09077, [petitioner] Joel Bridgeforth was convicted by a jury of signing the name of another person to a sales slip with intent to defraud (Pen. Code, § 484f, subd. (b); counts I, II; further section references are to the Penal Code unless specified otherwise), using an access card with intent to defraud (§ 484g;

---

[1] The factual and procedural background is taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Bridgeforth, No. C033234 (Sept. 26, 2000), a copy of which is attached as Exhibit A to Respondents' Answer, filed February 4, 2003.

1

counts III, VII), unlawfully making a card purporting to be an access card (§ 484f, subd. (a); count IV), unlawfully possessing completed checks with intent to defraud (§ 475a; counts VIII, IX, X), and committing grand theft (§ 487, subd. (a); count XI). [Petitioner] pled no contest to the allegation that he had been convicted of a prior serious felony within the meaning of section 1192.7, subdivision (c) and the "three strikes law" (§§ 667, sbuds. (b)-(i), 1170.12).

In case No. 99F03944, [petitioner] pled no contest to failing to appear, a felony (§ 1320.5) and to another allegation that he had been convicted of a prior serious felony (§§ 667, subds. (b)-(i), 1170.12, 1192.7, subd. (c)).

. . . .

Counts I-IV

On two occasions in June 1996, [petitioner] paid for merchandise using a credit card that had the name of Alexander Flon on it. The name on the card was not the authorized name on the credit card account.

Counts V-XI

While receiving a traffic citation in October 1996, [petitioner] presented the police officer with a counterfeit driver's license in the name of Michael Santo. That same month, [petitioner] opened a Bank of America checking account and obtained a credit card using the name Michael Santo. Between October 1996 in [sic] June 1997, [petitioner] used the checking account and credit card to obtain a large amount of money and merchandise. [Petitioner] also stole two blank checks from Niello Lincoln Mercury and thereafter deposited the two checks, made out to Michael Santo in the amount of $8,877.39 and $22,345.90, into the checking account at Bank of America.

(Respondents' Ex. A, People v. Bridgeforth, slip op. at 1-2.)

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////
/////
/////

II. Petitioner's Claims

    A.  Sufficiency of Evidence of Prior Conviction

Petitioner's first claim is that the prosecution failed to present admissible evidence of petitioner's prior conviction. Specifically, petitioner contends that the records offered to prove the prior conviction were not properly certified as "official records" and were therefore inadmissible and insufficient to support the finding that he had suffered a prior conviction.

As noted above, petitioner pleaded no contest to the allegation that he had suffered a prior serious felony conviction.[2] The essence of petitioner's claim is that there was insufficient evidence to support that plea. However, absent special circumstances not present here, there is no federal constitutional requirement that a no contest plea in state court be supported by a factual basis. See Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir.1985). Accordingly, petitioner's first claim for relief should be denied.

    B.  Failure to Prove that Petitioner's Prior Conviction Constituted First Degree Voluntary Manslaughter Under California Law

Petitioner's second claim appears to be that the prosecution failed to prove that petitioner's New York conviction also constituted first degree voluntary manslaughter under California law and, therefore, that use of the prior conviction to enhance petitioner's sentence violated both provisions of the California constitution and applicable provisions of the California Penal Code.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp,

---

[2] Under California law, a no contest plea has the same effect as a plea of guilty. See, e.g., People v. West, 3 Cal.3d 595 (1970). Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claims in the instant case. See Miller v. McCarthy, 607 F.2d 854, 856 (1979).

4

768 F.2d at 1085; see also, Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

Petitioner's second claim for relief is grounded in California law and is not cognizable in this federal habeas corpus proceeding. For this reason, the claim should be denied.

C. Due Process

Petitioner's third claim for relief is that his right to due process was violated by the prosecutor's alleged failure to state what "specific conduct" constituted a strike, which petitioner contends is required by various provisions of the California Penal Code. He also appears to be arguing that the description of his prior offense contained in the indictment differs from the description contained in other state court documents and that the prosecutor's failure to notify him of this discrepancy, or variance, violated his right to notice of the charges against him.

As noted above, petitioner entered a no contest plea to the allegation that he had been convicted of a prior serious felony. The record reflects the following colloquy between petitioner and the court:

> THE COURT: All right. And also, it is alleged that you were convicted on May 3, 1978 in New York for the crime of–of voluntary manslaughter, first degree.
>
> To that allegation, what is your plea?
>
> [THE PETITIONER]: No contest.
>
> THE COURT: All right. Are you pleading no contest freely and voluntarily?
>
> [THE PETITIONER]: Yes, I am.

(Reporter's Transcript on Appeal (RT) 544-45.) The record also reflects that the trial court informed petitioner that by admitting the prior conviction, "you are placing yourself within the Three Strikes Law which means that you have one prior conviction, that any penalty that would accrue to you based on these convictions in light of your prior conviction, that penalty would be doubled." (Id. at 531.) Petitioner stated that, "having all of those rights in mind and all of the consequences in mind," he wished to admit the prior conviction. (Id.)

5

1      In connection with its discussion of petitioner's claims on direct appeal, the
2 California Court of Appeal stated as follows:

> [Petitioner] ignores that he pled no contest not only to the allegation that he was convicted of first degree voluntary manslaughter in New York, but also to the allegation that this conviction was for a serious felony within the meaning of the three strikes law. By doing so, he admitted he committed the New York offense in a manner making it a "serious felony" under section 1192.7, i.e., with the specific intent to kill. (People v. Thomas (1986) 41 Cal.3d 837, 8442-843; People v. Ebner (1966) 64 Cal.2d 297, 303 [defendant's admission of prior conviction extends to all allegations concerning the conviction contained in the information].)
>
> The legal effect of a defendant's no contest plea is the same as a plea of guilty (Pen. Code, § 1016); it is an admission of every element of the charged enhancement and a concession that the prosecution possessed legally admissible evidence sufficient to prove the enhancement beyond a reasonable doubt. (People v. Thomas, supra, 41 Cal.3d at p. 844, fn. 6; People v. Turner (1985) 171 Cal.App.3d 116, 125.) Other then search and seizure issues or issues regarding certain proceedings held after the plea, the only issues cognizable on appeal following entry of a no contest plea are those based upon constitutional, jurisdictional, or other grounds going to the validity of the plea or legality of the proceedings, provided that a certificate of probable cause has been obtained.

(Answer, Ex. A at 3-4.)

To the extent petitioner is arguing that the prosecutor's actions at the hearing on the prior conviction violated California law, his claim should be denied. As explained above, state law claims are not cognizable in a federal habeas corpus proceeding. Any claim that petitioner was not advised of the consequences of pleading guilty to the prior conviction and/or that his prior conviction constituted a "strike" under the Three Strikes Law lacks a factual basis. The state court record reflects that petitioner was fully advised that his prior conviction counted as a "strike" and that the consequences of pleading guilty to a "strike" involved an enhanced sentence.

The state court record reflects that petitioner voluntarily pled guilty to a prior conviction knowing it would be used as "strike" in this and any future sentence imposed for a

6

violation of California law. There is no evidence in the record that petitioner's plea was not knowing, intelligent, and voluntary.[3] Under the circumstances presented here, petitioner has failed to demonstrate that any of his federal constitutional rights were violated by virtue of his plea of nolo contendere to the prior conviction allegation. Accordingly, this claim should be denied.

    D.  Marsden Motion

In his next claim, petitioner argues that the trial court erred in denying his request for substitute counsel pursuant to People v. Marsden, 2 Cal. 3d 118 (1970).[4] The background to this claim is the following.

On July 17, 1998, at a trial confirmation hearing, the following colloquy occurred between the trial judge, petitioner's attorney of record, (Mr. Veylupek) and another attorney apparently retained by petitioner (Mr. Vitale):

>MR. VEYLUPEK: Well, your Honor, I guess we're going to be confirming the trial date, and we'll be doing a motion to continue in front of Judge Ransom on Monday morning. I will not be prepared for trial by Monday. It's my understanding that Mr. Vitale had been retained and he would be handling the trial two weeks ago.
>
>THE COURT: You're both announcing you're not ready to go to trial?
>
>MR. VITALE: Yes.

/////

---

[3] A guilty plea must be knowing, intelligent and voluntary. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 F.2d at 749. "Solemn declarations in open court [indicating that a plea is being made voluntarily] carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in habeas proceeding when pleading defendant was represented by counsel).

[4] In People v. Marsden, 2 Cal. 3d 118 (1970), the California Supreme Court held that a trial court must permit a defendant seeking a substitution of counsel after the commencement of the prosecution's case to specify the reasons for his request.

7

> THE COURT: I think you should be ready to be sanctioned. That's an outrage. The matter has been set for trial for months, and two lawyers show up the eve of trial saying they're not ready?
>
> MR. VEYLUPEK: Well, as you know, Your Honor, I'd already entered a plea on behalf of Mr. Bridgeforth, and that –
>
> THE COURT: That was months ago.
>
> MR. VEYLUPEK: I understand, but at that time he made it clear to me he wanted another counsel to take the matter to trial.
>
> THE COURT: The Court appointed you to be his lawyer. Until that officially happened that you got off the case, you're his lawyer. This matter should be ready to go. We're not that sloppy about how we handle matters. The People have a right to get prepared and expect the defense to be prepared. And the conversation between you and the defendant, or you and Mr. Vitale is not relieving you of your responsibility to prepare the case. I know you know that.
>
> July 20th at 8:30, Department 8. You better all show up.

(Reporter's Transcript of Proceedings on July 17, 1998, lodged December 15, 2005, at 1-2.) On July 20, 1998, the trial date was continued to July 29, 1998 and the motion to continue was set for July 21, 1998. (Respondent's Lodged Document No. 2, lodged November 10, 2005, at 15.) On July 21, 1998, petitioner's motion to continue the trial date was denied. (Id.)

On July 29, 1998, petitioner's appointed counsel, Alex Veylupek, filed a written motion for a five-day continuance of the trial date. (Respondent's Lodged Document No. 1, lodged November 10, 2005). The basis for the motion was petitioner's desire that retained counsel Angelo Vitale, with whom he had a "relationship of confidence and trust," represent him at trial after Vitale's return from vacation. (Id. at 3.) The motion represented that petitioner had retained Mr. Vitale approximately one month before, after a plea agreement negotiated by attorney Veylupek "fell through" at the sentencing hearing. (Id. at 4.) According to the motion, after the plea agreement failed petitioner's guilty plea was set aside and the matter was re-set for jury trial. (Id.) At that point, "[h]aving lost faith in court-appointed counsel's willingness and

8

ability to represent him in a jury trial, [petitioner] made the appropriate arrangements to retain private counsel for conducting the trial." (Id.) In connection with the motion for continuance, attorney Veylupek declared:

> (1) That I am the court-appointed attorney of record for the above-named defendant in case number 96F09077 (previously consolidated with case number 97F04715), in which the defendant is charged with various violations of Penal Code sections 529.3, 532(a), 484f, 484g, 475a, and 487(a).
>
> (2) Said cause has been duly set for jury trial assignment in Sacramento County Superior Court on the above-stated date.
>
> (3) Defendant has retained private counsel, Angelo Vitale, to represent him in the jury trial on these charges.
>
> (4) I turned over the case file to Mr. Vitale over one month ago, and have only recently received the file back from retained counsel.
>
> (5) On July 17, 1998, the Honorable Judge Jane Ure ordered that I remain on the case as attorney of record for the defendant, refused to allow Mr. Vitale to substitute in as attorney for the defendant, and denied the defense motion to continue the trial date.
>
> (6) I have done nothing in the way of investigation in preparation for jury trial on behalf of Mr. Bridgeforth.
>
> (7) Wherefore the declarant prays for a continuance of the trial date in order to provide sufficient time for Mr. Vitale to prepare for trial, so that Mr. Bridgeforth may receive adequate legal representation in his trial defense.

(Id. at 6.)

On July 30, 1998, the court heard argument on petitioner's motion for a continuance of the trial date. (Respondent's Lodged Document No. 3, lodged November 10, 2005). Petitioner informed the court that he had retained the services of attorney Vitale, who was not able to be present on that date. (Id. at 1.) The court granted petitioner's request for a continuance of the trial date with the condition that "[c]ourt-appointed counsel Alex Veylupek is not relieved as counsel for the [petitioner]. Any request to substitute new counsel in for the [petitioner] must be in the form of a motion to be heard on August 5, 1998, with both Mr. Veylupek and Mr. Vitale present." (Id.) The matter was subsequently continued to August 6,

9

1998, which was also the first day of trial. (Respondent's Lodged Document No. 2, lodged November 10, 2005, at 15.) On August 6, 1998, petitioner, represented by Mr. Veylupek, entered into another plea bargain. (Respondent's Lodged Document No. 4, lodged November 10, 2005). There was no discussion of a request for substitution of counsel at that hearing. (Id. at 18.) Petitioner failed to appear on September 8, 1998 for sentencing and a bench warrant was issued for his arrest. (Lodged Document No. 2 at 15.)

On February 1, 1999, petitioner was re-arraigned. (Clerk's Transcript on Appeal (CT) at 16.)[5] On March 2, 1999, petitioner's previous plea was withdrawn, all prior counts were reinstated, a plea of not guilty was entered, and a trial date was set. (Id. at 18.) Trial commenced on May 5, 1999. (Id. at 19.) Before the presentation of evidence, the trial court heard argument on petitioner's Marsden motion. (Reporter's Transcript of Marsden Motion, lodged September 22, 2005.)

At the Marsden hearing, the trial judge asked petitioner to explain his reasons for requesting substitute counsel. Petitioner identified the following problem areas: (1) counsel's failure to hire an investigator and to interview prosecution witnesses regarding the photo lineup (id. at 34-35); (2) counsel's failure to file motions for suppression of evidence or for discovery (id. at 34-35); (3) counsel's failure to investigate the fingerprint evidence (id. at 36); (4) counsel's failure to obtain a handwriting expert; (id.); (5) counsel's failure to be prepared for trial and, in particular, counsel's statement to the trial judge that petitioner had "no defense;" (id. at 36-37); and (6) counsel's apparent reluctance to represent petitioner at a trial. (Id. at 37-38). In response, attorney Veylupek explained that he reviewed 300 pages of discovery and police reports, spoke with an investigator hired by attorney Vitale, reviewed witness statements,

---

[5] It appears from the record that both of petitioner's guilty pleas were set aside. (See Reporter's Transcript of Marsden motion, pages 34 through 49 (Marsden transcript), lodged on September 22, 2005; Answer, Ex. D at 11.) In state court, petitioner represented that at his re-arraignment on May 19, 1998, at which petitioner's plea agreement was refused, attorney Veylupek informed the court that petitioner had "no defense," at which point the trial judge advised petitioner to obtain "private counsel." (Answer, Ex. D at 11.)

1  engaged in plea negotiations, attended court appearances, prepared for cross-examination of the
2  prosecution witnesses, prepared motions in limine, prepared questions for voir dire, and prepared
3  and filed a discovery motion. (Id. at 39-41.) Counsel explained that he did not believe there
4  were grounds for "any kind of motion to suppress or any other kind of motions in my
5  professional opinion." (Id. at 41.) Counsel also explained that he did not believe there were any
6  grounds to challenge the lineup and he "didn't see any fruitful grounds for the defense to further
7  investigation (sic) that." (Id.) Counsel stated that he prepared a motion in limine to exclude
8  testimony from the handwriting expert, and that the motion may have challenged the fingerprint
9  evidence as well. (Id. at 42-44.) Counsel did not believe a handwriting expert would have been
10 helpful in the defense of the case. (Id. at 44.) Counsel indicated that he had not fully prepared
11 for trial because he believed that a plea bargain was in petitioner's best interests, and he had
12 concentrated his efforts on that approach. (Id. at 44-45.) Counsel stated that he had reviewed all
13 of the witness statements with respect to each charge and had reviewed the tangible evidence, but
14 had not been supplied with a fingerprint comparison result despite a request for same in his
15 motion for discovery. (Id. at 47.) Counsel agreed that he did not believe there was "much of a
16 defense theory to this case," and stated that he had informed petitioner of this position "all
17 along." (Id. at 45.) When asked whether he was prepared sufficiently to represent petitioner
18 "today," counsel responded that he was willing to proceed to trial if he was retained on the case,
19 even though he believed there was no significant defense to the charges against petitioner. (Id. at
20 48.) Counsel stated that he had spoken with petitioner about the charges, the evidence, and
21 whether petitioner should testify. (Id. at 48-49.)

When the trial judge asked petitioner whether he had anything else to say, petitioner responded as follows:

> Well, your Honor, I guess basically I've covered everything.
>
> Just that I know Mr. Veylupek really has my interests in heart, you know, but I – I've – I've always felt that a lot of these charges that were against me were thrown – were added on, I guess, to fill in

       the gaps, missing gaps for the case. And a lot of evidence wasn't true.

       And I know the only way that could be found out is it needed some investigation, and without an investigation I would just be walking – I would just be going along with everything that's been happening. It's just not right.

       I know Mr. Veylupek is a good attorney, but I think it's – if I had an appeal to do, he would be the man for it, but trial – for trial it's – I don't think his heart is in it.

       Just – this particular case or any other trial, I just don't think – I know he means well because he's really trying to advise me as far as, you know, plea, but I don't want to accept the plea, I want to take this trial and I always have.

       But every time I took a plea was because there was no one fighting for me.

       So I end up taking the plea because it was either that or going to trial and knowing what the outcome is going to be because you have no defense.

(Id. at 46-47.) The court ruled as follows:

       I'm going to deny the Marsden motion and order the transcript sealed. I find that there has been adequate representation by Mr. Veylupek.

       I don't find that there's any conflict or breakdown in the attorney-client relationship. I feel that Mr. Veylupek will put forth as vigorous a defense as he can for Mr. Bridgeforth.

(Id. at 49.)

       On May 6, 1999, a hearing was held on various motions in limine. (Reporter's Augmented Transcript on Appeal, at 4.) The court stated that it would grant a short continuance so that attorney Veylupek could talk with the investigator hired by petitioner and "do whatever he feels needs to be done with respect to the handwriting exemplar." (Id.) There was no discussion at this hearing of a request by petitioner for substitute counsel.[6]

---

[6] In the petition and traverse, petitioner asserts that discussions concerning his desire for substitute counsel took place numerous times during the proceedings. (See Pet. at 6; Traverse at 16.) Because none of the transcripts relevant to petitioner's Marsden claim had been lodged with this court, the court requested that respondent lodge the transcripts of all motions for substitution

12

Petitioner argues that the trial court improperly interfered with his desire to proceed to trial represented by attorney Vitale. He also contends that attorney Veylupek was not able to effectively represent him at trial because Veylupek believed petitioner had no defense to the charges against him. He argues, in essence, that the trial court's rulings prevented him from proceeding with the attorney of his choice and forced him to proceed to trial with an attorney who was unprepared and reluctant to go to trial. In summary, petitioner alleges that: (1) the trial court conducted an inadequate inquiry into his request for substitute counsel; (2) the court improperly failed to allow petitioner to proceed with substitute counsel; (3) his trial counsel rendered "deficient representation;" (4) there was an "actual conflict" due to "multiple representation;" (5) the trial court improperly failed to grant a continuance of the trial date in order to accommodate attorney Vitale; and (6) the combined effect of these errors had an "adverse affect" (sic) on the proceedings. (Pet. at "page 6 of 7/1;" traverse at 16.)

On direct appeal, petitioner argued that the trial court "erred in denying his Marsden motion on the ground that his trial attorney failed to question witnesses about whether the photographic lineup was suggestive." (Opinion at 5.) The appellate court denied the claim with the following reasoning:

> Our review discloses no abuse of discretion. The court gave [petitioner] the opportunity to establish that his right to counsel would be substantially impaired if he did not receive substitute counsel, but [petitioner's] showing was insufficient. Defense counsel responded to [petitioner's] claim, and provided a rational and viable explanation. The court was entitled to accept counsel's explanation to the extent there was a credibility question between [petitioner] and counsel. (People v. Smith (1993) 6 Cal.4th 684, 697.)

---

of counsel held in this case. Respondent subsequently lodged several transcripts and other state court documents. As explained above, these filings reflect that the only actual Marsden hearing was conducted on May 5, 1999. All other hearings, although relevant as background information, did not specifically address petitioner's request for substitute counsel and will not be analyzed as Marsden hearings. Petitioner has not provided any transcripts in addition to those lodged by respondent. Accordingly, he has failed to substantiate any claim that proceedings held on dates other than those described above were dispositive of the Marsden claim raised here.

13

> [Petitioner] contends the court's denial of the motion was an abuse of discretion because the evidence at trial showed that Maiga Thrasher, the witness who identified [petitioner] with respect to count VII, identified him in a pretrial photographic lineup based in part upon his earring. According to defendant, "it would appear that any reasonable investigation of the identification procedures would have shown that they were highly suggestive and that a motion to suppress the witness identifications based on a suggestive identification procedure was appropriate and should have been made . . . . [I]t is apparent that the photo lineup was unfair because [defendant] was the only person wearing an earring or else [Thrasher] would not have testified that she identified [defendant] because of 'the earring in the picture.'"
>
> The basic problem with [petitioner's] contention is that, at the time the court ruled on the motion, it did not have the benefit of Thrasher's testimony or [petitioner's] theory regarding the manner in which the lineup was suggestive. The trial court is not expected to be clairvoyant. "Defendant may not attempt to make up for what was lacking in his motion by relying on matters subsequent to its denial. A reviewing court 'focuses on the ruling itself and the record on which it was made. It does not look to subsequent matters . . . .' [Citation.]" (People v. Berryman (1993) 6 Cal.4th 1048, 1070, disapproved on another point in People v. Hill (1998) 17 Cal.4th 800, 823, fn. 1.)
>
> In any event, defense counsel specifically stated that he saw nothing suggestive about the lineup. On the record before us, counsel's assessment has not been shown to be deficient. Thus, defendant has not established that his right to the assistance of counsel was substantially impaired and, to the extent that his argument is intended as a claim of ineffective assistance of counsel, it necessarily fails. (People v. Musselwhite (1998) 17 Cal.4th 1216, 1260 ["on direct appeal, competency is presumed unless the record affirmatively excludes a rational basis for the trial attorney's choice"].)

(Id. at 5-8.)

On petition for review, petitioner raised the remainder of the Marsden claims asserted in the instant petition. (Answer, Ex. D.) Those claims were summarily denied. (Id.)

The Sixth Amendment to the Constitution guarantees the right to effective and competent assistance of counsel in a criminal prosecution. Strickland v. Washington, 466 U.S. 668 (1984). Where a defendant is proceeding with the assistance of counsel, he may move to dismiss or substitute counsel, whether appointed or retained. The grant or denial of such a motion may depend on its timeliness and the nature of the conflict between the defendant and

current counsel. United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986). In assessing on direct appeal a federal trial court's decision to deny a motion to substitute counsel, the court looks at three factors: "'(1) timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense.'" Id. (quoting United States v. Mills, 597 F.2d 693, 700 (9th Cir. 1979)). See also, United States v. Musa, 220 F.3d 1096, 1102 (9th Cir. 2000). A denial of a motion for substitution of counsel on the first day of trial will be upheld where there is insufficient showing of conflict with current counsel. McClendon, 782 F.2d at 789. Additionally, it is within a trial judge's discretion to deny a motion to substitute made on the eve of trial if the substitution would require a continuance. Id.

Recently, the United States Court of Appeals for the Ninth Circuit ruled that in assessing such a claim in the context of a habeas corpus proceeding, the focus is different than that on direct review. In Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc) the court stated:

> Our primary reason for accepting this case for en banc review was to correct the standard of review we have been using to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict. In Bland, we said that the test is whether a state court's denial of such a motion was for an "abuse of discretion." Bland, 20 F.3d at 1475.
>
> * * *
>
> [O]ur only concern when reviewing the constitutionality of a state-court conviction is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). See also Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546. 115 L.Ed. 640 (1991) ("The [habeas] court does not review a judgment but the lawfulness of the petitioner's custody simpliciter.") (emphasis in original). A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect. Accordingly, to the extent that they

15

1  conflict with this opinion, we overrule <u>Bland</u> and <u>Crandell v.
2  Bunnell</u>, 144 F.3d 1213 (9th Cir. 1998).

3  <u>Id</u>. at 1024-25 (footnotes omitted).  In <u>Schell</u> the court determined that it was "well established
4  and clear that the Sixth Amendment requires on the record an appropriate inquiry into the
5  grounds of such a motion, and that the matter be resolved on the merits before the case goes
6  forward."  218 F.3d at 1025.  <u>See</u> also  <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982)
7  ("Thus, the state trial court's summary denial of a defendant's motion for new counsel without
8  further inquiry violated the Sixth Amendment.")

9  Under such an inquiry the state trial court's handling of the motion to substitute
10 appointed counsel in this case certainly passes constitutional muster.  The trial court allowed
11 petitioner the opportunity to fully explain on the record his problems with attorney Veylupek.
12 The court focused on and fully explored the nature of the conflicts expressed by petitioner.  The
13 undersigned finds that the trial court made an adequate inquiry into petitioner's complaints and
14 resolved the matter on the merits before proceeding with the case.

15 Moreover, even under the prior "abuse of discretion" standard of review, the state
16 trial court's resolution of petitioner's request for substitute counsel was appropriate.  Although it
17 appears from the record that attorney Veylupek believed the best resolution of this case was a
18 plea agreement, he prepared for a possible trial and was willing and able to proceed on the
19 appointed day.  Counsel's performance at trial was competent and there is no evidence that any
20 doubts about the advisability of going to trial negatively influenced his performance.  Although
21 petitioner faults counsel for failing to challenge the lineup procedure, Veylupek explained at the
22 <u>Marsden</u> hearing that he did not pursue an investigation into this area because he did not believe
23 it would be fruitful.  There is no competent evidence before this court that counsel's assessment
24 in that regard was incorrect.

25 In order to establish an ineffective assistance of counsel claim based on a conflict
26 of interest, a petitioner must show that an actual conflict of interest adversely affected his

16

lawyer's performance. See Cuyler v. Sullivan, 446 U.S. 335, 348-350 (1980).  There is no evidence that a significant conflict of interest existed between petitioner and his counsel.  The trial court specifically found that there was no conflict when it denied petitioner's Marsden motion on May 5, 1999.  A conflict which causes problems in some area of the attorney-client relationship (for example, by generating feelings of mistrust between attorney and client), but which ultimately has no significant impact on counsel's representation before the court, does not cause an adverse effect in the sense of Cuyler. See United States v. Mett, 65 F.3d 1531, 1535 (9th Cir.1995).  Finally, petitioner's complaints about counsel's failure to engage in specific investigation or discovery were sufficiently explained by counsel and have not been substantiated in the petition before this court.  Under the circumstances presented here, the trial court did not err in denying petitioner's request for new counsel.  See United States v. Robinson, 913 F. 2d 712, 716 (9th Cir. 1990) (no error in failing to offer defendant substitute counsel where the crux of the problem was defendant's anger at his attorney's refusal to raise defenses to the charges which the attorney considered frivolous); see also United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987) (finding that defendant's complaints that his appointed counsel refused to structure a defense as he directed did not constitute good cause for substitution of counsel and stating, "there is no absolute right to counsel of one's choice").  Accordingly, petitioner's Marsden claim should be denied.

        E.   Abuse of Discretion by California Court of Appeal

        In his next claim, petitioner contends that the state appellate court violated his rights to due process and equal protection when it failed to rule on issues he raised in a pro per supplemental brief filed in connection with his direct appeal and failed to hold an evidentiary hearing on his claims or augment the record with additional material relevant to his Marsden claim.  These allegations fail to state a cognizable federal claim.  There is no federal constitutional requirement that a state court hold an evidentiary hearing on any claim or rule on claims contained in supplemental briefs filed by parties represented by counsel.  In addition,

although there is no evidence that petitioner obtained an evidentiary hearing on any of his claims, petitioner has failed to demonstrate that he was entitled to a hearing. Petitioner has failed to demonstrate that the state courts' handling of his claims violated his due process rights or any other federal constitutional right. Accordingly, petitioner is not entitled to relief on this claim.

### F. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance when he failed to raise on appeal the issues contained in petitioner's pro per supplemental brief filed in connection with his direct appeal. The claims contained in that brief appear to be the same claims raised in this court. This claim was summarily denied by the California Supreme Court on petition for review. (Answer, Ex. D.)

The Sixth Amendment guarantees the effective assistance of counsel. To establish that trial counsel's representation failed to meet Sixth Amendment standards, petitioner must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice. Strickland v. Washington, 466 U.S. 668 (1984). Trial counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  Miller, 882 F.2d at 1434, n.9.

Petitioner informs the court that his appellate counsel declined to raise the issues contained in petitioner's supplemental brief but advised petitioner to file the brief himself.  It is clear, therefore, that counsel chose to reject the claims suggested by petitioner and proceed with claims that he believed had more merit.  Counsel's tactical decision to press only claims with more merit was "within the range of competence demanded of attorneys in criminal cases" and does not constitute ineffective assistance.  McMann v. Richardson, 397 U.S. 759, 771 (1970).  Accordingly, petitioner is not entitled to relief on this claim.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

/////

/////

/////

/////

1 that failure to file objections within the specified time may waive the right to appeal the District

2 Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3 DATED: January 12, 2006.

```
_____
UNITED STATES MAGISTRATE JUDGE
```

7 008/012; brid0679.hc